J-S08038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIAM SHABAN | : | |
| | : | |
| Appellant | : | No. 969 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 24, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003014-2024

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 18, 2026**

Appellant Mariam Shaban appeals from the judgment of sentence imposed following her conviction of forgery and receiving stolen property.[1] Appellant challenges the sufficiency of the evidence for her conviction of forgery. We affirm.

The trial court provided a thorough review of the facts in this matter:

On July 27, 2023, [Appellant] entered the TD Bank at 100 S. Broad Street in the city of Philadelphia and attempted to cash check #270 from the account of Joanna McClain [(the Victim)]. The check was made payable to "[Appellant]" in the amount of $400.84, with the memo line stating that the check was for "cleaning services." When asked to produce two forms of identification since she didn't have an account at TD Bank, [Appellant] "pushed back" and kept asking why she needed to provide this. Eventually, she gave the bank teller Leon Lord ("Lord") her driver's license and health identification card. Lord testified that he took the check and compared it to the customer's prior signatures via a system at the bank and noticed that "the

_____

[1] 18 Pa.C.S. §§ 4101(a)(1) and 3925(a), respectively.

signature was completely off." Lord notified his supervisor, who advised him to contact the account holder[, the Victim]. Lord took the check and [Appellant]'s identification cards into the back room and called [the Victim], who confirmed that she did not write that check and that the account was on hold because her checkbook had been stolen. When Lord returned to the counter, [Appellant] had already left the bank. The Commonwealth showed surveillance photographs from the bank that day showing [Appellant] entering the bank, attempting to cash the check, and then leaving while Lord was calling [the Victim].

[The Victim] testified that on July 19, 2023, someone had broken into her car and stolen her briefcase, which contained a checkbook. [The Victim] contacted TD Bank and told them about the stolen checkbook. She told the bank which checks she had already written and to whom, so that those checks would still clear. The bank informed her that the entire account would be put on hold and she would be notified if someone tried to cash a check not included in the ones she had already accounted for. After reviewing check #270, [the Victim] testified that she did not write the check, it was not her handwriting, she did not know [Appellant], she did not use any cleaning services, and she had not given anyone else permission to write a check from her account.

On October 2, 2024, at the conclusion of a non-jury waiver trial, this [c]ourt found [Appellant] guilty of forgery and receiving stolen property. On March 24, 2025, this Court sentenced [Appellant] to one year of telephone-reporting probation as [Appellant] stated that she was moving to the Washington, DC area to reside in a sober-living house. [Appellant] did not file any post-sentence motions.

On April 14, 2025, [Appellant] filed a notice of appeal to the Superior Court. On June 5, 2025, upon receipt of all notes of testimony, this [c]ourt ordered [Appellant] to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b) and [Appellant] counsel did so on June 25, 2025.

*See* Trial Ct. Op., 7/29/25 at 1–3 (unpaginated, citations omitted, and some formatting altered).

On appeal, Appellant presents the following issue:

Was the evidence insufficient to sustain [Appellant]'s conviction for forgery as the Commonwealth failed to establish the required *mens rea* element that [Appellant] knew the check she attempted to cash at a bank was fraudulent?

*See* Appellant's Brief at 2.

Appellant claims that the evidence presented at trial was insufficient to establish the *mens rea* element of forgery because the Commonwealth failed to prove that Appellant knew the check she presented was fraudulent and stolen. *See id.* at 6. Appellant claims that her behavior inside the bank was not indicative of criminal intent. *See id.* at 6-9. Further, Appellant argues that mere possession of a forged check is insufficient to establish the intent to defraud. *See id.* at 7 (citing *Commonwealth v. Gibson*, 416 A.2d 543 (Pa. Super. 1979)).

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and some formatting altered).

The relevant subsection of forgery is defined by statute as follows:

**(a) Offense defined**.--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

    (1) alters any writing of another without his authority[.]

18 Pa.C.S. § 4101(a)(1).

Additionally, "[w]e may look to the totality of the defendant's conduct to infer fraudulent intent. Circumstantial evidence is sufficient to establish the defendant's knowledge that the document is a forgery." *Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019) (citations omitted).

Here, the trial court explained:

In the case at bar, [Appellant] argues that the evidence was insufficient to establish that she knew the check she possessed was forged when she presented it to the bank to be cashed. All of the evidence adduced at trial directly contradicts this assertion. First, there is no question that the check was forged. Account holder[, the Victim,] testified that she reported to police that her checkbook had been stolen out of her car the week before [Appellant] tried to cash the check at TD Bank. [The Victim] further testified that she did not know [Appellant]; that it was not [the Victim]'s handwriting on the check; that no one, including [Appellant], had ever provided cleaning services for her; and that she had never given anyone permission to write a check from her account on her behalf. Based upon this testimony, this [c]ourt inferred that [Appellant] knew the check was forged as it was clear that [Appellant] knew she did not know [the Victim] and had never provided cleaning services for her. Thus, there was no reasonable basis for [Appellant] to believe that a check was legitimate where it was made payable to her by a person she did not know for services she never provided.

[Appellant]'s suspicious behavior in the bank further provided evidence that she knew the check was forged. Bank teller Lord testified that [Appellant] raised "red flags" when she initially refused to provide two forms of identification and "pushed back" as to why this was necessary. When Lord went into the back to telephone [the victim], [Appellant] abruptly left the bank without her driver's license and health card. This evidence, when taken together with the complete lack of relationship between [Appellant] and [the victim] and the fact that the checkbook had been reported as stolen the week before, was sufficient for this [c]ourt to find that [Appellant] knew the check was forged. Accordingly, no relief is due.

*See* Trial Ct. Op., 7/29/25 at 4-5.

Based on our review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to establish Appellant's intent to defraud. *See Palmer*, 192 A.3d at 89; *see also Green*, 203 A.3d at 253; 18 Pa.C.S. § 4101(a)(1). Appellant's argument relies heavily upon *Commonwealth v. Gibson*, which we have previously summarized as follows:

[Defendant, Gibson,] entered a bank and presented a check for $150.00 payable to cash. The check was signed and endorsed in the name of . . . Kutz. When the bank refused to cash the check without identification, the appellant left the bank. . . . Kutz testified he had never written a check for $150.00, and that, when he received a call from the bank after the [defendant] had left, he noticed some of his checks were missing. [Defendant] was convicted by a jury of, among other things, forgery. On appeal, this Court reasoned "[t]he evidence just as easily supports the inference [that defendant] found the check or received it from someone else." This [c]ourt noted that no circumstantial evidence of guilt was presented at trial. Our [c]ourt concluded: "[defendant's] possession of the check, in itself, does not justify a conclusion that he forged the check or knew that it was forged."

*See Green*, 203 A.3d at 254-55 (Pa. Super. 2019) (citations omitted).

- 5 -

Here, we find that this case is distinguishable from *Gibson* because the Commonwealth presented evidence establishing that Appellant did more than simply possess a forged personal check. Here, unlike in *Gibson*, the check was made out to Appellant. *See* N.T., 10/2/24, at 29, 39-41. As stated by the trial court, the evidence established that:

> [The Victim] testified that she reported to police that her checkbook had been stolen out of her car the week before [Appellant] tried to cash the check at TD Bank. [The Victim] further testified that she did not know [Appellant]; that it was not [the Victim]'s handwriting on the check; that no one, including [Appellant], had ever provided cleaning services for her; and that she had never given anyone permission to write a check from her account on her behalf.

*See* Trial Ct. Op., 7/29/25 at 4-5. Additionally, Appellant's behavior at the bank raised "red flags" by refusing to provide two forms of identification and by asking why the forms of identification were necessary. *See id.* at 5; N.T., 10/2/24, at 21-22. Appellant also left the bank without her driver's license and health card when the bank teller called the Victim to confirm whether she wrote the check. *See* Trial Ct. Op., 7/29/25 at 5; N.T., 10/2/24, at 23-24.

Based on the above evidence, viewed in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to prove Appellant acted with the intent to defraud. *See Palmer*, 192 A.3d at 89; *see also Green*, 203 A.3d at 253; 18 Pa.C.S. § 4101(a)(1). Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/18/2026</u>